Filed 3/26/25  P. v. Mendez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RAMON EDDIE MENDEZ,<br><br>        Defendant and Appellant. | C100374<br><br>(Super. Ct. Nos.<br>STKCRFE20070007983,<br>SF104268A) |

In 2008, a jury convicted defendant Ramon Eddie Mendez of second degree murder, discharging a firearm from a vehicle, and being an active participant in a criminal street gang and found true several firearm and gang enhancements.  The court sentenced defendant to an aggregate sentence of 45 years to life.

In 2023, defendant filed petition for writ of habeas corpus to vacate his conviction of being an active participant in a criminal street gang and for the case to be remanded for resentencing.  The trial court declined to dismiss any enhancements and reimposed the original term.

1

Defendant appeals, arguing the trial court abused its discretion in declining to dismiss the firearm enhancements. Because defendant has not established an abuse of discretion, we will affirm the judgment.

## I. BACKGROUND

In 2008, a jury found defendant guilty of the second degree murder of Gabriel Carranco (Pen. Code, § 187, subd. (a)),[1] discharging a firearm from a vehicle (§ 12034, subd. (d)), and being an active participant in a criminal street gang (§ 186.22, subd. (a)). As to both the murder and discharging a firearm offense, the jury found defendant personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)) and that defendant committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). As to the murder, the jury found defendant perpetrated the murder by means of shooting a firearm from a motor vehicle intentionally at another person outside of the vehicle with the intent to inflict great bodily injury (§ 190, subd. (d)).

The court sentenced defendant to an aggregate sentence of 45 years to life, consisting of 20 years to life on the murder count and 25 years to life for the associated firearm enhancement. The court stayed punishment for the discharging a firearm conviction (and associated enhancements) and for the criminal street gang conviction under section 654.

Defendant appealed the judgment, and we affirmed.[2]

In 2022, defendant filed a petition for writ of habeas corpus to vacate his conviction of being an active participant in a criminal street gang (§ 186.22, subd. (a))

---

[1] Further undesignated statutory references are to the Penal Code.

[2] We grant the People's request to judicially notice our opinion from defendant's prior appeal (*People v. Mendez* (Sept. 28, 2010, C060024) [nonpub. opn.]). (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)

and for the case to be remanded for resentencing, in light of *People v. Rodriguez* (2012) 55 Cal.4th 1125. The People conceded defendant was entitled to have the criminal street gang count vacated and to be resentenced but opposed the court striking or reducing any enhancements. The court granted defendant's petition, vacated the participant in a criminal street gang count, and set a hearing for resentencing.

Defendant's resentencing memorandum argued the court should strike or reduce the firearm enhancements related to the murder and discharging a firearm from the vehicle counts. Defendant specifically argued that the enhancements should be dismissed because multiple enhancements were alleged in a single case (§ 1385, subd. (c)(2)(B)), application of the enhancements could result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)), and that the crimes were connected to prior victimization or childhood trauma (§ 1385, subd. (c)(2)(E)).

In 2024, the court held a resentencing hearing. The court admitted defendant's C-file, medical records, and heard testimony from Dr. Carolyn Murphy, a psychologist. It also admitted and considered Dr. Murphy's report.

Dr. Murphy's report detailed that when defendant was 13 years old, he learned that his stepfather was not his biological father. Dr. Murphy testified it could be traumatic for a male child to grow up without knowing his biological father and that trust issues could develop in a person if they were told their stepfather was their biological father but later learned that was not the truth. Her report also stated defendant grew up in neighborhoods that had gang activity. Dr. Murphy further testified that a person growing up in that environment may experience a lack of safety or the need for protection. She also testified that a person like defendant, who committed the murder at the age of 20, would have a brain that is still developing. She elaborated that a person with a developing brain can act more impulsively and have less of an appreciation for the consequences of their actions.

On cross-examination, Dr. Murphy said none of the childhood trauma suffered by defendant would lessen his culpability for the underlying crimes. Dr. Murphy

3

specifically testified that defendant told her he grew up in a "nice household" and had a supportive mother and stepfather.

Dr. Murphy's report indicated that defendant continued to be associated with gang activity while incarcerated, including drug use and possession, weapons possession, and involvement in two disturbances involving gang members. The report stated defendant had used alcohol, heroin, cocaine, cannabis, and methamphetamine while incarcerated. The report also detailed that defendant had been convicted of possessing a weapon and possession of marijuana and heroin while incarcerated.

The prosecution also detailed defendant's postconviction major rules violations beginning in 2010, which included battery, weapons found in his cell on four separate occasions, unauthorized possession of medication, disposing a bindle of drugs in a toilet, and theft of state property. It argued the underlying criminal conduct coupled with defendant's postconviction conduct did not support a modification of the original sentence.

When considering defendant's youth and childhood trauma, the court stated: "Let's take Dr. Murphy's testimony at face value that people under 25, their frontal lobe isn't fully developed. It's not a pass for committing homicide or anything like that. But, everybody is cognizant of the fact that, as younger people we're not fully developed, and as such, we make bad decisions. [¶] Let's accept that at face value. Now that[] he's older, however—and, I was kind of perplexed as to why you [the prosecutor] were at first objecting to Dr. Murphy's report [being admitted into evidence]. Because, I don't think it's good for [defendant] because it details what he has done since he's been in custody. [¶] And he's picked up new offenses. He's continuing to use. He's getting into fights. He's got weapons at the prison. I mean, all of these things negate resentencing. So, I think that that is just as important to look at as the facts of the case. Because, the facts of the case justify a 45 to life sentence. The issue now is whether a judge re-looking at this, should take into effect, you know, the youthful offender."

4

The court continued: "[T]he conduct surrounding the homicide and the subsequent sentence at the time, even though [the trial court] didn't have any discretion, I think was an appropriate sentence. I am fully aware of the youthful offender facts. The circumstances surrounding [defendant]. And, quite frankly, I'm sympathetic to it. I mean, to find out that your dad isn't your dad has got to be extremely troubling. To grow up in a gang neighborhood, it's got to be incredibly difficult. Something I never had to deal with. [¶] But, what I'm struck by is [defendant's] conduct as an adult in the penal institutions that he has been in. That even as an adult, and, quite frankly, not that many years ago. Even if I disregard the July of 2023 incident, you still have possessions of weapons. We have fights. We have drugs. And what Dr. Murphy indicates is antisocial personality disorder and conduct. She indicates that he will eventually probably age out of that. I'm paraphrasing. Those aren't her exact words. [¶] But, we haven't gotten to that position, because [defendant] is still using. He's possessing weapons, et cetera. So, I'm not going to exercise discretion to resentence [defendant]. I want to be clear for the Appellate Court, that I understand one, that I could strike the [section] 12022.53[, subdivision (d) enhancement]. Or under [*People v. Tirado* (2022) 12 Cal.5th 688] I could impose a lesser gun enhancement. [¶] I'm not exercising my discretion to do either of those." Accordingly, the court reimposed the sentence of 45 years to life.

Defendant timely appealed.

## II. DISCUSSION

Defendant claims the trial court abused its discretion, arguing it failed to give "great weight" to the mitigating circumstances when it declined to dismiss the firearm enhancements and that the presence of enumerated mitigating circumstances created a presumption favoring dismissal of the enhancement. The People assert the trial court did not abuse its discretion. We agree with the People.

5

*A.      Section 1385*

When a determination of whether the trial court abused its discretion depends on the scope of that discretion under section 1385, we review the question de novo.  (*People v. Tirado, supra*, 12 Cal.5th at p. 694.)

Under section 1385, a court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c)(1).)  In exercising its discretion under subdivision (c)(1), a court "shall consider and afford great weight to evidence offered by the defendant" to prove one of nine enumerated mitigating circumstances, including whether multiple enhancements were alleged in a single case (§ 1385, subd. (c)(2)(B)), application of the enhancements could result in a sentence of over 20 years (§ 1385, subd. (c)(2)(C)), and that the crimes were connected to prior victimization or childhood trauma (§ 1385, subd. (c)(2)(E)).  Proof of these mitigating circumstances "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(2).)  If the court does not make a finding of danger to public safety it retains discretion to determine whether countervailing factors—other than public safety—" 'nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' "  (*People v. Walker* (2024) 16 Cal.5th 1024, 1029*,* quoting *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098.)

Citing section 1385, subdivision (c)(2)(B), (C), and (E), defendant argues the presence of enumerated mitigating circumstances—(1) multiple enhancements alleged in a single case, (2) the application of an enhancement could result in a sentence of over 20 years, and (3) the current offense is connected to prior victimization or childhood trauma—created a presumption favoring dismissal of the firearm enhancements that could only be overcome by a finding that dismissal would endanger public safety.

However, in *People v. Walker, supra*, 16 Cal.5th at page 1034, the California Supreme Court rejected such an interpretation of section 1385. The Supreme Court held that "the plain language of section 1385, subdivision (c)(2) does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Walker, supra*, at p. 1033.) Notwithstanding the presence of a mitigating circumstance, a trial court has discretion to decide whether to dismiss an enhancement in the interests of justice under section 1385, subdivision (c)(2). (*Walker, supra*, at p. 1036.)

B.      *Abuse of Discretion*

We review a court's decision to not strike an enhancement under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) Defendant bears the burden of clearly showing that the trial court's decision was irrational or arbitrary. (*People v. Carmony* (2004) 33 Cal.4th 367, 378-379.)

Defendant claims the trial court did not afford great weight to the mitigating circumstance related to childhood trauma, arguing the court recognized the mitigating factors but the record does not reflect that the court afforded "great weight" to them. We disagree.

In the absence of evidence in the record to the contrary, we presume the trial court was aware of, and followed, the law. (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) "The court is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) On this record, we presume the trial court afforded great weight to the mitigating circumstances but declined to dismiss the enhancements because countervailing factors neutralized the great weight of the mitigating circumstance, such that dismissal was not in the interests of justice. (*People v. Walker, supra*, 16 Cal.5th at p. 1036.)

The court considered defendant's C-file, medical records, and Dr. Murphy's testimony and report. The record demonstrates the trial court considered the mitigating

7

circumstances that multiple enhancements were alleged, defendant's youth during the commission of the crime, and defendant's childhood trauma. The court acknowledged defendant was 20 years old at the time of the murder and that his brain was not fully developed. It found that defendant learning his stepfather was not his biological father at age 13 would be "extremely troubling," and that growing up in a gang neighborhood would be "incredibly difficult."

Weighing against those mitigating factors, the trial court considered Dr. Murphy's testimony, which indicated that defendant's childhood trauma did not lessen his culpability for the underlying crimes and that defendant grew up in a stable household with a supportive mother and stepfather. The court found that the countervailing factors of the facts of the underlying crime and defendant's postconviction conduct, including, continuing to commit crimes while incarcerated, committing several major rules violations, and continuing to use drugs "negate[d] resentencing." Defendant also acknowledged his conduct in prison had been "deplorable." Considering the totality of the circumstances, the trial court found these aggravating factors outweighed the mitigating factors. (*People v. Williams* (1998) 17 Cal.4th 148, 163.)

The trial court appropriately considered and weighed the present mitigating factors. (*People v. Ortiz, supra*, 87 Cal.App.5th at p. 1098.) Defendant has not established error or an abuse of discretion.

## III. DISPOSITION

The judgment is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
EARL, P. J.

/S/

_____
DUARTE, J.

9